UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENOR D. ICKES,<br><br>               Plaintiff,<br><br>     v.<br><br>UNIVERSITY OF CALIFORNIA COLLEGE OF THE LAW, SAN FRANCISCO,<br><br>               Defendant. | Case No. 25-cv-05859-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO RECUSE AND MOTION FOR INTRAVENUE TRANSFER**<br><br>Docket Nos. 47, 50 |

In May 2025, Mr. Ickes was permanently disqualified as a student at UC Law. In July 2025, he initiated this lawsuit. *See* Docket No. 1 (complaint). At that time, he did not make any request for a specific venue within this District. In August 2025, Mr. Ickes moved for a TRO. The Court denied the motion. *See* Docket No. 23 (order). Ten days later, Mr. Ickes amended his complaint, *see* Docket No. 24 (FAC), and then, a month thereafter, moved for a preliminary injunction. The Court denied the motion for a preliminary injunction at a hearing held on November 3, 2025. *See* Docket No. 44 (minutes). The Court's minute order reflected that Mr. Ickes was not likely to succeed on the merits of his claims – in fact, had even failed to raise serious questions on the merits. Within days, Mr. Ickes filed the two motions now pending before the Court: (1) a motion to recuse and (2) a motion for an intravenue transfer.

Having considered the parties' briefs and accompanying submissions, the Court finds both motions suitable for resolution without oral argument. The hearing on the two motions is therefore **VACATED**. Both the motion to recuse and the motion to transfer are **DENIED**.

# I. MOTION TO RECUSE

A. Legal Standard

Mr. Ickes's motion to recuse invokes two statutes: 28 U.S.C. § 144 and § 455.

> Section 144 provides for recusal where a party files a timely and sufficient affidavit averring that the judge before whom the matter is pending has a personal bias or prejudice either against the party or in favor of an adverse party, and setting forth the facts and reasons for such belief. Similarly, section 455 requires a judge to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned," including where the judge "has a personal bias or prejudice concerning a party."

*Braik v. SW. Airlines Co.*, No. No. 25-cv-08269-VKD, 2025 U.S. Dist. LEXIS 210555, at *1-2 (N.D. Cal. Oct. 24, 2025).[1]

As indicated by the above, "[s]ection 144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit."[2] *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980).

---

[1] The relevant text of § 144 is as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144.

The relevant text of § 455 is as follows:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>     (1) Where he has a personal bias or prejudice concerning a party . . . .

*Id.* § 455(a), (b)(1).

[2] In its opposition, UC Law argues that the affidavit must come from the party to the proceeding, and not their counsel. *See Giebe v. Pence*, 431 F.2d 942, 943 (9th Cir. 1970) (holding that district court did not err in denying disqualification motion because, *inter alia*, affidavit was not submitted by the party but rather by the party's attorney). In response to this argument, Mr. Ickes has now submitted his own declaration (*i.e.*, in conjunction with his reply brief). For purposes of the pending motion, the Court assumes there is no procedural bar to Mr. Ickes's motion.

2

An affidavit is "not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source." *Id.* at 868.  "If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits." *Id.* at 867; *see also* Civ. L.R. 3-14 (providing that, "[w]henever an affidavit of bias or prejudice directed at a Judge of this Court is filed pursuant to 28 U.S.C. § 144, and the Judge has determined not to recuse him or herself and found that the affidavit is neither legally insufficient nor interposed for delay, the Judge shall refer the request for disqualification to the Clerk for random assignment to another Judge").

In contrast to § 144, § § 455 "sets forth no procedural requirements.  [The] section is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge." *Id.* at 867-68.

> In light of the difference in procedures for sections 144 and 455, it is apparent that the two sections are not redundant but are complementary, even when the only ground for recusal alleged is bias or prejudice.  A party desiring referral to a second judge upon a determination of legal sufficiency may invoke the provisions of section 144 by filing a motion under that section accompanied by a timely and sufficient affidavit.  Such a motion should also prompt the judge to whom the motion is directed to determine independently whether all the circumstances call for recusal under the self-enforcing provisions of section 455(a) & (b)(1),[] a matter which rests within the sound discretion of the judge.  Thus, section 455 modifies section 144 in requiring the judge to go beyond the section 144 affidavit and consider the merits of the motion pursuant to section 455(a) & (b)(1).

*Id.* at 868.

Although § 144 and 455 differ as described above, the substantive standard for recusal under each statute is the same: "Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (internal quotation marks omitted).  In other words, the question is

> "whether a reasonable person perceives a significant risk that the

3

> judge will resolve the case on a basis other than the merits."
> [Notably,] [t]he "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." The standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."

*United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).[3] Equally important, rulings, opinions formed, or statements made by a judge during the course of litigation are not a basis for recusal. *See id.* at 913-14 (emphasizing that there must be an extrajudicial source as a basis for recusal); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994).

B.  Plaintiff's Argument

According to Mr. Ickes, the undersigned should recuse himself because of a bias in favor of UC Law or, alternatively, because there is an improper appearance of partiality. In support of his argument, Mr. Ickes cites to the following:

- The undersigned accepted UC Law's "misdirection" that his case is about a failure to accommodate when, in fact, he did not plead such a claim.
- The undersigned's courtroom is in close proximity to UC Law.
- The undersigned has hired law students as externs from UC Law.
- About two weeks before the hearing on the preliminary injunction motion, the undersigned participated in a panel sponsored by the UC Law Journal (a student organization).[4] The subject of the panel was the Judicial Internship Opportunity Program ("JIOP"). Mr. Ickes seems to believe that JIOP is a UC Law program. *See* Mot. at 6 (asserting that the hearing on the preliminary injunction motion took place on the same day as the "opening day of the *school's* internship application

---

[3] In a brief filed in conjunction with a different motion, Mr. Ickes argues that the undersigned should have made certain disclosures, even if there was no actual basis for disqualification. In support, he cites a California statute. *See* Docket No. 54 (Reply at 11) (arguing that California Code of Civil Procedure § 170.1 "mandates disclosure of any information 'reasonably relevant to the question of disqualification,' even if the judge believes there is no actual basis for disqualification"). That statute has no application here because California law does not govern.

[4] The UC Law Career Development Office may have co-sponsored the event. *See* Oswald Decl., Ex. 41 (Instagram post by UC Law Journal).

4

period, during which UC Law students can apply to work directly with the judge")
(emphasis added); Oswald Decl., Ex. 41 (Instagram post stating that JIOP
"applications open up on November 3rd"); Reply at 5 (claiming that JIOP is "a
collaborative program between UC Law and the [undersigned]").  That is incorrect.
JIOP is a program run by the American Bar Association.  *See*
https://www.americanbar.org/groups/litigation/about/awards-initiatives/jiop/program/ (last visited December 7, 2025) (describing JIOP and also
noting that the 2026 program timeline begins with November 3, 2025, when
applications open for all students); *see also* Oswald Decl., Ex. 43 (article discussing
UC Law student who participated in ABA's JIOP).

- The undersigned stated during the hearing on the preliminary injunction motion
  that UC Law is a "great" school.  The transcript for the hearing reflects that the
  undersigned did not state that UC Law was a "great" school but did state that it was
  "one of the best law schools in the country."  Tr. at 23; *see also* Tr. at 18 (stating
  that UC Law was "one of the better law schools in the nation").

C.     Timeliness

As an initial matter, the Court notes that, under § 144, a request for relief must be timely filed.  In addition, although § 455 does not expressly contain such a requirement, courts have inferred that there is one.  *See, e.g.*, *Klayman v. Lim*, 830 Fed. Appx. 660, 663-664 (D.C. 2020) (stating that § 455 "is similarly understood to require litigants to 'raise the disqualification issue within a reasonable time after the grounds for it are known'"; adding that there is a timeliness requirement to prevent the "specter of gamesmanship" – *e.g.*, a party delaying in moving for recusal "until after he knew how the judge would rule on the merits"); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992) (recognizing that § 455 is self-enforcing but "it does not necessarily follow that a party having information that raises a possible ground for disqualification can wait until after an unfavorable judgment before bringing the information to the court's attention[;] [i]t is well established in this circuit that a recusal motion must be made in a timely fashion" to address the risk that a litigant would use a recusal motion for a strategic

5

purpose).

Here, there are serious questions as to whether Mr. Ickes timely sought relief. Many of the facts he cites in support his motion easily could have been found once the undersigned was assigned to Mr. Ickes's case – at the very least, before Mr. Ickes filed his motion for a preliminary injunction. *Cf. Twist v. United States DOJ*, 344 F. Supp. 2d 137, 142 (D.D.C. 2004) (holding that plaintiff's § 144 motion was time barred because he "filed his motion at the close of the case and bases his motion on facts long-known"; "[t]he purpose of the recusal statute is not to enable an unhappy litigant to judge-shop until he finds a judge that rules in his favor"). For example, it is obvious and well known that the federal courthouse in San Francisco and UC Law are geographically close to one another. It is also well known to the legal community (including law students such as Mr. Ickes) that law students (including those from UC Law) can and do extern for federal judges in the San Francisco courthouse. Following the Court's denial of the TRO motion, Mr. Ickes knew that the Court viewed his failure to request an accommodation as an issue. *See* Docket No. 23 (order denying TRO) ("Mr. Ickes has not addressed why he could not have asked for an accommodation for his disability *before* he was ever disqualified. . . . Mr. Ickes has not explained why, when seeking readmission post-disqualification, he could not have explained to UC Law that any extenuating circumstances were not likely to continue if he were given an accommodation . . . .") (emphasis in original).

For purposes of the pending motion, however, the Court need not dispositively rule on the issue of timeliness. Even if the Court assumes Mr. Ickes's motion was timely with respect to all factual predicates for his motion, he has failed to establish that, based on the factual predicates, a reasonable person could conclude that the undersigned's impartiality might reasonably be questioned. In other words, the basis for his recusal motion is not legally sufficient. *See United States v. Azhocar*, 581 F.2d 735, 739 (9th Cir. 1978) (stating that there is legal insufficiency "if the facts, taken as true, do not provide fair support for the contention that statutory bias exists").

D.  Legal Sufficiency

The Court has considered the factual predicates for Mr. Ickes's motion to recuse, both individually and collectively.

6

1. *The undersigned accepted UC Law's "misdirection" that his case is about a failure to accommodate when, in fact, he did not plead such a claim.* This factual predicate is insufficient to support Mr. Ickes's claim of bias because the alleged bias does not stem from an extrajudicial source. Moreover, contrary to what Mr. Ickes contends, accommodation is an inherent part of his main ADA/Rehabilitation Act claim.

Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12312. Similarly, under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 42 U.S.C. § 12312. "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). "There is no significant difference in analysis of the rights and obligations created by the [two statutes]." *Id.* at 1045 n.11.

To make out a prima facie case under either the ADA or Rehabilitation Act, Mr. Ickes must allege that (1) he is disabled; (2) he is "otherwise qualified" to remain a student at UC Law, *i.e.*, he can meet the essential eligibility requirements of the school, with or without reasonable accommodation; (3) he was dismissed solely because of his disability; and (4) UC Law receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *See id.* at 1045. With respect to element (2), Mr. Ickes's inherent position is that he is "otherwise qualified" because he could have met the eligibility requirements of UC Law *if* the school had accommodated his disability. *See id.* (noting that, in the school context, an otherwise qualified person is an individual who meets the academic standards for admission or participation, *but* under the ADA and Rehabilitation Act, a school must provide a disabled student with reasonable accommodations to ensure no discrimination on the basis of disability).

Although Mr. Ickes insists that failure to accommodate is a red herring, that is belied by the allegations in his operative complaint. *See, e.g.*, FAC ¶ 122 ("UC Law failed to provide

7

effective communication and reasonable accommodations to a student with Tourette Syndrome and comorbidities who experiences, for example, cognitive flexibility impairment and executive functioning challenges with adapting to new or unusual situations because of his disability . . . .").

The Court acknowledges that, in a brief filed in conjunction with a different motion, Mr. Ickes seems to be putting forward a new theory. *See* Docket No. 54 (Reply at 3) (arguing that, "[w]ithout ever having any accommodations, Plaintiff would not have been disqualified from UC Law on May 20, 2025, as Plaintiff currently has a GPA above the threshold required of other students which he has upheld without accommodations[;] [h]is exclusion was the sole result of UC Law's denial of equal access to the standard Evidence course"). But Mr. Ickes omits that he did not take the "standard" Evidence course – and instead took the Law and Process Evidence course – because his GPA *had* fallen below the minimum requirement, and, *as a condition of readmission*, UC Law put in place additional academic requirements. To the extent Mr. Ickes suggests that it was discriminatory to impose additional requirements as a condition of readmission, that raises the issue of whether UC Law failed to accommodate his disability and/or whether UC Law was on notice of his disability. *See* Docket No. 44 (Civil Minutes at 2) (noting that Mr. Ickes's law school application disclosed only Tourette's, not any co-morbidities such as ADHD, and that Mr. Ickes characterized his disability as childhood Tourette Syndrome and expressly stated that the symptoms had faded by adulthood).

2.  *The undersigned's courtroom is in close proximity to UC Law.* This fact, in and of itself, is irrelevant. Mr. Ickes cites no authority suggesting that geographical location is a relevant consideration with respect to a judge's alleged bias. *Cf. In re Judicial Misconduct*, 816 F.3d 1266, 1268 (9th Cir. 2016) (finding no "appearance of impropriety" simply because the district judge and the university's attorney were next-door neighbors – *i.e.*, there was merely "geographic proximity").

3.  *The undersigned has hired law students as externs from UC Law.* This fact is not sufficient to raise concern about impartiality. The undersigned has hired individual law as externs; it has not hired UC Law. Furthermore, the undersigned does not hire externs exclusively from UC Law. Rather, students from all Bay Area law schools have been hired, as well as from schools

8

outside the Bay Area. That UC Law has an interest in placing students as externs does not mean that the undersigned is therefore biased in the school's favor when UC Law students are hired.

Courts have commonly held that there is an insufficient showing of bias simply because a presiding judge is an alumnus of the defendant school. *See Roe v. St. Louis Univ.*, 746 F.3d 874, 886 (8th Cir. 2014) (holding that judge did not err in denying motion to recuse even though plaintiff alleged, *inter alia*, that judge was an alumnus of the university and its law school, taught classes there, and made positive comments about the school; "[a]lumni connections are not a reasonable basis for questioning a judge's impartiality, even if alumni contribute financially or participate in educational activities"); *Harris v. Bd. of Supervisors*, 409 Fed. Appx. 725, 727 (5th Cir. 2010) (stating that "[b]eing an alumnus of a university does not preclude a judge from presiding over a case involving that university"); *Maurey v. Univ. of S. Cal.*, 12 Fed. Appx. 529, 532 (9th Cir. 2001) (recognizing that judge was an alumna, made small yearly donations, participated in a school fund raiser "by donating her presence at an auctioned-off meal," and served as a guest judge at the school's moot court competition, but this "amount[ed] to no more than ordinary involvement of an alumna with her alma mater and do not call into question her impartiality"); *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1028 (10th Cir. 1988) (noting that it was "mere speculation" that judge's leadership position in the school's alumni affairs would prejudice him against her); *Brody v. Pres. & Fellows of Harvard College*, 664 F.2d 10, 12 (1st Cir. 1981) (stating that "an alumnus's interest in the general welfare of his alma mater hardly seems likely to manifest itself in a bias concerning a single staff employment decision").

If a judge's own attendance at a school is not enough to support bias, then per force simply hiring a student who attends the defendant school (and is simply as extern for the judge) is insufficient.[5] *See, e.g.*, *In re Judicial Misconduct*, 816 F.3d at 1267 (noting "[i]t is well established that the law 'does not require recusal for . . . minimal alumni contacts . . . [including] when [a] judge was alumnus of defendant-university, served as unpaid adjunct professor who offered internships for the university's law students, gave the university a yearly donation for

---

[5] To be clear, the undersigned is not an alumnus of UC Law.

9

football tickets . . . planned to create scholarship at the university,' or served as a 'member of . . . school alumni social organization'"); *J.C. v. Locha*, No. 1:21-cv-12361-NLH-MJS, 2022 U.S. Dist. LEXIS 41553, at *6-7 (D.N.J. Mar. 9, 2022) (noting "[t]he fact that members of [judge's] staff may attend or have graduated from Rutgers University or that Rutgers law students serve as interns also is unavailing" given that "mere attendance by the judge or a member of his staff of a university who is a party to an action does not merit a finding that a judge is biased toward that institution"); *see also Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir.1993) (holding recusal not required even though judge was an unpaid adjunct professor, made contributions to the university in the past, and had law students intern).

4.   *About two weeks before the hearing on the preliminary injunction motion, the undersigned participated in a panel sponsored by the UC Law Journal (a student organization).*[6] The authorities cited above also establish that this factual predicate is insufficient to support Mr. Ickes's claim of bias. Moreover, as indicated above, Mr. Ickes has made a significant factual error here. The Court takes judicial notice of the fact that JIOP is a program operated by the ABA, not by UC Law. The Court's participation in a panel promoting an ABA program does not establish bias in favor of UC Law, nor might a reasonable person conclude that the undersigned's impartiality might reasonably be questioned based on that fact. *See also* Judicial Code of Conduct, Canon 4 (providing that "[a] judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities").

5.   *The undersigned stated during the hearing on the preliminary injunction motion that UC Law is a "great" school.* As indicated above, the Court did not state that UC Law was "great" but did state that it was one of the better or best law schools in the country. This factual predicate is insufficient as the alleged bias does not arise from an extrajudicial source. Furthermore, Mr. Ickes leaves out the context of the Court's reference to UC Law as one of the

---

[6] Mr. Ickes has also tendered evidence that, subsequently, UC Law Journal made a post to Instagram thanking the undersigned and the other panelists for participating. *See* Docket No. 51 (notice).

10

better or best schools. The Court stated that *Mr. Ickes* was "obviously an intelligent person and got admitted to one of the best law schools in the country." Tr. at 23 (emphasis added); *see also* Tr. at 18 (stating that it was "a hard stretch" to say that a school policy was unclear to Mr. Ickes given that he had graduated summa cum laude from high school or college and had qualified for admission to "one of the better law schools in the nation"). The context reflects that, if anything, the Court was not praising UC Law as much as Mr. Ickes himself. In any event, presumably, Mr. Ickes does not think too poorly of UC Law or he would not have applied to the school in the first place, let alone seek readmission. While, in his reply brief, Mr. Ickes now asserts that the school's ranking has "plummet[ed] to #88 in recent years," Reply at 8, he still seeks readmission. *See* FAC at 266 (in Prayer for Relief, asking for "[r]einstatement of Mr. Ickes as a student in good standing with interactive process, appropriate accommodations, and correction of his academic record").

## II.     MOTION FOR INTRAVENUE TRANSFER

In addition to a motion to recuse, Mr. Ickes has also filed a motion for intravenue transfer – specifically, to transfer his case from the San Francisco Division to the Oakland Division. Mr. Ickes maintains that he cannot have a fair trial in San Francisco given, *e.g.*, UC Law's location in and ties to federal judges in San Francisco. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."); Civ. L.R. 3-2(h) ("Whenever a Judge finds, upon the Judge's own motion or the motion of any party, that (1) a civil action has not been assigned to the proper division within this district in accordance with this rule, or (2) that the convenience of the parties and witnesses and the interests of justice will be served by transferring the action to a different division within the district, the Judge may order such transfer, subject to the provisions of the Court's Assignment Plan.").

The motion to transfer is denied. The interests of justice do not warrant a transfer. The situation here is hardly comparable to one where a transfer is necessary because of pervasive, prejudicial publicity. *See Oliver v. City & Cnty. of San Francisco*, No. C 07-2460 JL, 2009 U.S. Dist. LEXIS 149301, at *6 (N.D. Cal. Mar. 25, 2009) (noting that "'massive, pervasive, and

1 prejudicial' publicity at trial can deprive a [party] of the right to a fair trial," but "[m]erely
2 unfavorable publicity" by itself is not sufficient; "[o]nly where a jury is '"utterly corrupted by
3 press coverage"' may unfavorable press coverage justify a change of venue").  Just as there is no
4 need for the undersigned to recuse himself, there is no need to take Mr. Ickes's case outside of the
5 San Francisco Division.  There is no bias or even an appearance of partiality, whether on the part
6 of the undersigned or other federal judges in San Francisco.

This order disposes of Docket Nos. 47 and 50.

**IT IS SO ORDERED**.

Dated: December 7, 2025

_____
EDWARD M. CHEN
United States District Judge